FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

2016 SEP -1  A 9: 34

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

|  |  |  |
|---|---|---|
| **REGINA SHIELDS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Case No.: GJH-15-1736** |
| **v.** | * | |
| | * | |
| **PRINCE GEORGE'S COUNTY, et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Regina Shields ("Plaintiff"), individually and as the personal representative of

the Estate of Samuel Shields ("Shields"),[1] has previously filed an Amended Complaint against

Prince George's County, Corporal Chandler Hines, Private First Class Andrew Jackson, Private

First Class Erik Wood, Private First Class Keith Funderburk (collectively, the "County

Defendants"), and Corizon, Inc. ("Corizon"), alleging seventy-four counts, including violations

of Shields' civil rights, pursuant to 42 U.S.C. § 1983. *See* ECF No. 41. This Memorandum

Opinion and accompanying Order address Plaintiff's Motion for Leave to File a Second

Amended Complaint, ECF No. 52, Defendant Corizon's Motion to Strike Declaration, ECF No.

53, Defendant Prince George's County's Motion for Bifurcation and Stay of Discovery, ECF No.

43, and Defendant Corizon's Motion to Dismiss Amended Complaint, ECF No. 42. A hearing on

the motions was conducted on June 22, 2016. *See* Loc. R. 105.6 (D. Md. 2014). For the reasons

---

[1] To limit confusion, when referring to the Plaintiff in this Opinion, the Court uses male pronouns, referring to the gender of the decedent.

stated below, Plaintiff's Motion for Leave to File a Second Amended Complaint is GRANTED

in part and DENIED in part, Defendant Prince George's County's Motion for Bifurcation and

Stay of Discovery is DENIED, Defendant Corizon's Motion to Strike is DENIED, as moot[2], and

Defendant Corizon's Motion to Dismiss is GRANTED in part and DENIED in part.

## I.    BACKGROUND[3]

On June 17, 2014, at approximately 11:45am, Shields boarded a Washington

Metropolitan Area Transit Authority ("WMATA") bus at 100 Addison Road in Seat Pleasant,

Maryland. ECF No. 52-1 ¶ 44. Upon discovering that he had not paid the fare, WMATA

personnel ordered him to pay or exit the bus. *Id.* ¶ 45. Two WMATA transit officers then

physically removed Shields from the bus and ordered him to place his hands behind his back. *Id.*

¶ 46. Shields made a fist with both hands, folded his arms underneath his chest and laid down on

the ground. *Id.* ¶ 47. Shields was then transported by WMATA transit officers to the Prince

George's County Detention Center ("Detention Center") in Upper Marlboro, Maryland for

processing. *Id.* ¶ 48. At the Detention Center, one of the WMATA transit officers informed

Corporals Marcus Evans, Jessica White and Tyrone Duckett that Shields had been disorderly and

combative while also noting that Shields was not under the influence of alcohol or drugs. *Id.* ¶

51-52.

While in the processing area, Shields would not remain in his seat and began loudly

yelling and singing in a language Corporal White could not understand. *Id.* ¶ 53. As a result of

this strange behavior, Shields, who was already partially restrained, was placed in full restraints.

---

[2] Defendant Corizon's Motion to Strike Declaration, ECF No. 53, asks the Court to strike the Declaration of Billy L.
Ponds, attached to Plaintiff's Opposition to Defendants' Motion to Dismiss the Amended Complaint, ECF No. 48-1,
which cites to a "collection of articles" regarding Corizon's past practices. Similar allegations were included in the
body of the Second Amended Complaint and the Court has not relied on the Declaration in resolving the pending
motions. Thus, the Motion to Strike is denied as moot.

[3] For the purposes of this Memorandum Opinion, the Court adopts the facts alleged in Plaintiff's Second Amended
Complaint, ECF No. 52-1.

*Id.* ¶ 55. A search of Shields was conducted and his property was inventoried, which included

documents from the Social Security Administration, prescription medication, additional

prescription information, a Smart trip fare card, credit cards and other personal items. *Id.* ¶¶ 56-

57. The Detention Center was also provided with information concerning his medical history,

including that Shields was asthmatic. *Id.* ¶ 61. No doctor or nurse was summoned to examine

Shields. *Id.* ¶ 63. After being fingerprinted, Shields, still in full restraints, was placed in an

isolation cell. *Id.* ¶ 65.

At approximately 4:20pm and again at 7:01 pm, "Nurse Victoria," a Corizon employee,

reported to the processing area, where Shields was being held, to interview detainees. *Id.* ¶ 66.

The Second Amended Complaint alleges that "based on Officer Roger's statements to

[Corporals] Evans, White and Duckett and Samuel Shields' strange and bizarre behavior,

Defendants Prince George's County and Corizon were fully aware from the time that Samuel

Shields entered the Detention Center he suffered from a mental health disorder." *Id.* ¶ 67. It is

further alleged that "Nurse Victoria and other members of the Corizon medical staff who

interviewed detainees in the processing area including Samuel Shields were aware that he was

suffering from a mental health disorder." *Id.* ¶ 68.

After being held in an isolation cell in full restraints for more than seven hours, Shields

was escorted to appear before the Court Commissioner where bond was set on the charge of

obstruction and hindering. *Id.* ¶¶ 69-70. Around 9:48pm, Shields, who was no longer in full

restraints but had not received his medication, once again displayed signs of unusual behavior

and spoke in a loud voice. *Id.* ¶ 79. Numerous officers observed the bizarre behavior but did not

call the medical unit. *Id.* ¶¶ 82-83. Instead, Sergeant Burr called the Emergency Response Team

("ERT") for assistance and instructed that Shields be escorted to the disciplinary unit. *Id.* ¶¶ 84,

87. Despite the lack of any aggressive or combative behavior from Shields, the ERT members approached Shields from behind and forcibly bent his arms behind his back to place the handcuffs around his wrists. *Id.* ¶¶ 91-92. Shields' arms were pulled from behind his back and forcibly pushed upward, which caused him to scream in pain. *Id.* ¶¶ 96-97. At all times, Shields appeared to be confused. *Id.* ¶ 93. Shields was then escorted to the male strip search room by Defendants Wood and Funderburk. *Id.* ¶ 99. Outside of the strip search room, various ERT members, including Defendants Wood, Hines, Funderburk, and Jackson, used joint locks and struck Shields with their knees, hitting his common peroneal nerve, and used closed fist strikes to his femoral artery to get him inside the room. *Id.* ¶ 101. Once inside the strip search room, Shields was pushed to the ground, while handcuffed, and called a "stupid motherfucker." *Id.* ¶¶ 104-05. He was severely and repeatedly beaten inside the strip search room. *Id.* ¶¶ 106-107. Defendant Hines can be seen on a video spraying OC spray into the strip search room, followed by sounds of coughing and sneezing. *Id.* ¶ 127. OC spray creates a risk of death for individuals who are asthmatic, taking other drugs or subjected to restraining techniques that restrict the breathing passages. *Id.* ¶ 125. ERT members then resumed beating Shields as he said "do not kill me." *Id.* ¶ 130. After additional beating, there is an extended period of silence on the video and Defendant Sergeant Emmanuel Odion[4] requests a broadcast of "signal 89."*Id.* ¶¶ 129, 134.

The silence ends when Defendant Wood "suddenly and excitingly" exits the strip search room and asks for the "breathing thing." *Id.* ¶ 147. Chest compressions were eventually started. *Id.* ¶ 148. Minutes later, Corizon employees, Defendants Nurse Amadou and Nurse Adebayo[5] ("Corizon Nurses"), reported to the strip search room area to provide medical attention. *Id.* ¶ 151. The Second Amended Complaint alleges that the Corizon Nurses failed to take control of

---

[4] Defendant Odion is added as a defendant in the Second Amended Complaint.
[5] Nurse Amadaou and Nurse Adebayo are added as defendants in the Second Amended Complaint. First names are not provided for either.

the management of Shields' life-threatening medical emergency. *Id.* ¶¶ 152-153. The Second Amended Complaint also alleges that the Corizon Nurses "failed to take into consideration the bystander effect, specifically, they failed to direct the numerous correctional officers standing around Samuel Shields to clear the area to avoid any impediment to administering medical attention to Samuel Shields' life-threatening medical emergency." *Id.* ¶ 154. Additionally, a Corizon Nurse slapped Shields and appeared to check his pulse but failed to check his airway for an obstruction, never checked his oxygen level, failed to properly administer the "Ambo bag" consistent with medically prescribed standards, pumped air faster than what would be consistent with normal breathing, and never performed any chest compressions. *Id.* ¶¶ 157-164.

At 10:24pm, a Corizon Nurse left to retrieve an oxygen tank and, three minutes later, returned with one. *Id.* ¶ 165. Meanwhile, a video depicts CPR being performed on Shields in a manner that does not conform to the standards set forth by the American Heart Association. *Id.* ¶ 166. At 10:27pm, a Corizon Nurse attempted to use the automated external defibrillator ("AED") but did not receive a response from Shields. *Id.* ¶ 167. According to the Second Amended Complaint, "the Corizon nurse did not properly or timely utilize the AED on Samuel Shields and her actions did not conform to the American Heart Association's standard, specifically to utilize the AED if the person has not begun moving after five CPR cycles, a period of approximately two minutes." *Id.* ¶ 169. It is alleged that more than a series of five chest compressions and more than two minutes passed before the AED was activated. *Id.* ¶¶ 168 and 170. The ERT members continued chest compressions but the Corizon Nurse never utilized the AED a second time. *Id.* ¶ 173. At 10:32pm, EMS personnel arrived and took over efforts to revive Shields. *Id.* ¶ 175. He was transported to Southern Maryland Hospital Center where he was pronounced dead approximately one hour after arrival. *Id.* ¶ 185.

Shields suffered from medical and emotional disabilities and was receiving Social

Security and Supplemental Security Income aid and services due to those disabilities at the time

of his death. *Id.* ¶¶ 41-42.

Plaintiff filed the original Complaint on June 12, 2015, ECF No. 1, and filed a Consent

Motion for Leave to file an Amended Complaint on November 9, 2015, ECF No. 35, which was

granted on November 25, 2015, ECF Nos. 39 and 41. The County Defendants filed their Answer

on November 20, 2015, ECF No. 37, and Corizon filed its Motion to Dismiss the Amended

Complaint on December 14, 2015, ECF No. 42. Plaintiff has now filed a Motion for Leave to

File a Second Amended Complaint. ECF No. 52. The County Defendants consent to Plaintiff's

Motion for Leave to File, ECF No. 58, and Corizon opposes, ECF No. 62. The County

Defendants' have also filed a Motion for Bifurcation and Stay of Discovery. ECF No. 43.

## II.    DISCUSSION

### A. Motion for Bifurcation and Stay of Discovery (ECF No. 43)

Defendant Prince George's County seeks to bifurcate claims brought against the

individual officers from claims brought against Prince George's County and stay discovery

against Prince George's County pending resolution of the claims against the officers. ECF No.

43. Pursuant to Federal Rule of Civil Procedure 42(b), district courts may order a separate trial of

"one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" for

"convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). In

deciding whether to bifurcate, courts have broad discretion. *Dixon v. CSX Transp., Inc.,* 990 F.2d

1440, 1443 (4th Cir.), *cert denied,* 510 U.S. 915, 114 S. Ct. 305 (1993). Although the

determination of whether bifurcation is appropriate is fact specific, the Court often "orders

bifurcation in § 1983 cases where, as here, a plaintiff has asserted claims against individual

government employees as well as the municipal entity that employs and supervises those individuals." *Dodson v. Prince George's Cty.,* No. GJH-13-02916, 2014 U.S. Dist. LEXIS 134999, at \*3-4 (D. Md. Sept. 25, 2014) (citations omitted). While "'complex' issues may justify bifurcation, separating issues for trial 'is not to be routinely ordered.'" *Wood v. Walton,* No. WDQ-09-3398, 2012 U.S. Dist. LEXIS 174738, at \*12 (D. Md. Dec. 7, 2012) (citations omitted).

Notably, the reason courts frequently order bifurcation in § 1983 cases is that § 1983 cases do not permit vicarious liability under a *respondeat superior* theory; meaning that while the establishment of the actively involved officers' liability must precede a finding of liability of the non-active employer, it does not, without more, establish liability on the part of the employer. *See, e.g., Marryshow v. Bladensburg,* 139 F.R.D. 318, 319 (D. Md. 1991) (allowing bifurcation in a 1983 case because "to hold the inactive Defendants liable, Plaintiff must first establish at least one active Defendant violated his constitutional rights"). In such cases, if a plaintiff prevails in establishing a claim against one or more of the active defendants, he then "'must establish that the actions of the active Defendants subjecting him to Section 1983 liability were proximately caused by a custom, practice or policy of an inactive Defendant' – the County." *Dawson v. Prince George's Cty.,* 896 F. Supp. 537, 540 (D. Md. 1995) (quoting *Marryshow v. Bladensburg,* 139 F.R.D. 318 (D. Md. 1991)). Thus, if a Court bifurcates a § 1983 claim and the officers are determined not to be liable, the resources devoted to discovery and trial of the municipality are conserved.

Here, Plaintiff has brought § 1983 claims against Prince George's County but has also alleged a number of additional claims against Prince George's County that *are* based on a theory of vicarious liability. When a plaintiff brings vicarious liability claims against a defendant

employer, the employer "is not simply an 'inactive defendant,' liable only if Plaintiff can first prove that [the employee] violated [his] constitutional right." *Treadwell v. Prince George's Cty. Health Dep't*, No. DKC 13-0063, 2014 U.S. Dist. LEXIS 96862 at *14 (D. Md. July 14, 2014). Thus, bifurcation does not conserve the resources of the Court or the parties because the defendant employer "would have to defend itself at trial on the vicarious liability claims even if a separate trial were held for the *Monell* and negligent training and supervision claims." *Devito v. Barrant*, No. 03-CV-1927, 2005 U.S. Dist. LEXIS 22444, at *37 (E.D.N.Y. Aug. 23, 2005) (denying defendant's motion to bifurcate); *see also Treadwell,* 2014 U.S. Dist. LEXIS 96862 (D. Md. July 14, 2014) (denying defendant's motion to bifurcate because plaintiff also brought a vicarious liability claim under Title VII). Because Plaintiff has brought numerous claims alleging vicarious liability against Prince George's County, Prince George's County's Motion for Bifurcation and Stay of Discovery is Denied.[6]

### B.  Motion for Leave to File Second Amended Complaint (ECF No. 52)

Plaintiff seeks leave to file a Second Amended Complaint to "include additional defendants and claims based on the parties involved in the events," and to include additional facts that were developed "as a result of consultants viewing the video/audio recording of the incident." ECF No. 52 at 2. The County Defendants consent to Plaintiff's Motion for Leave to Amend, ECF No. 58, while Defendant Corizon opposes the motion, ECF No. 62. In the proposed Second Amended Complaint, Plaintiff asserts that the Corizon Nurses, who were not named in previous complaints, and Corizon violated Shields' Eighth and Fourteenth Amendment rights

---

[6] The Court will consider phasing discovery during the forthcoming Rule 16 scheduling conference and will be willing to revisit the issue of bifurcated trials after the close of discovery and the resolution of any motions for summary judgment. *See Morgan v. Rockville*, PWG-13-1394, 2013 U.S. Dist. LEXIS 180993, at *20-21 (D. Md. December 30, 2013) (ruling that a decision on bifurcation at the motion to dismiss stage was premature but suggesting discussion of phased discovery during Rule 16 conference).

pursuant to 42 U.S.C. § 1983 (Counts V and VI, respectively) and that Corizon also violated

Title II of the Americans with Disabilities Act ("ADA") (Count VIII), ECF No. 52-1.

Courts may "freely give leave [to amend] when justice so requires." Fed. R. Civ. P.

15(a)(2). "A motion to amend should be denied only where it would be prejudicial, there has

been bad faith, or the amendment would be futile." *Nourison Rug Corp. v. Parvizian*, 535 F.3d

295, 298 (4th Cir. 2008) (citations omitted). But "'if the underlying facts or circumstances relied

upon by a plaintiff may be a proper subject of relief' and the plaintiff moves to amend, the Court

should grant the motion to give the plaintiff 'opportunity to test his claim on the merits.'" *Crump*

*v. Montgomery Cty. Bd. of Educ.*, No. PWG-12-3378, 2013 U.S. Dist. LEXIS 153310, at *12 (D.

Md. Oct. 25, 2013) (internal citation omitted). Corizon has not argued, and the Court does not

find, that a Second Amended Complaint would be prejudicial or is in bad faith.[7] Thus, the issue

for the Court is whether the proposed amendment is futile.

"A proposed amendment is considered futile if it cannot withstand a motion to dismiss."[8]

*Glass v. Ryder Integrated Logistic Corp.*, JKB-15-3501; 2016 U.S. Dist. LEXIS 32126 at *3, (D.

Md. March 14, 2016) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). When

deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained

in the complaint," and "draw all reasonable inferences [from those facts] in favor of the

plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir.

2011) (citations and internal quotation marks omitted). Pursuant to Rule 8(a)(2) of the Federal

---

[7] Corizon does note that the information added to the Second Amended Complaint was available to the Plaintiff earlier and that it had previously indicated that it would not consent to a Second Amended Complaint. ECF 62-1 at 3 and 5. Neither fact creates an issue of prejudice or bad faith, however.

[8] In light of this standard and to avoid multiple rounds of motion practice, as the Court indicated during the Motions Hearing, the Court has analyzed this Motion as if Defendants had filed a Motion to Dismiss the Second Amended Complaint and has considered the arguments made in Defendant Corizon's Motion to Dismiss the Amended Complaint. *See MHD-Rockland, Inc. v. Aerospace Distributors, Inc., et al*, Civil No. CCB-13-2442, 2014 U.S. Dist. LEXIS 333, at *6 (D. Md. January 3, 2014) (treating the motion to dismiss the original complaint as addressing the later-filed amended complaint where both complaints involved the same alleged defects). Thus, a subsequent motion to dismiss counts not dismissed by this Opinion would be futile.

Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss invoking Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).

Additionally, the factual allegations in a complaint must be more than "labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). A complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *See id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

### 1. Constitutional Violations Pursuant 42 U.S.C. § 1983

#### a. Corizon Nurses

Plaintiff alleges that the level of care provided by the Corizon Nurses violated the Eighth Amendment's prohibition against cruel and unusual punishment. The Eighth Amendment's prohibition against cruel and unusual punishment was made applicable to the States by the

Fourteenth Amendment. *Estelle v. Gamble* 429 U.S. 97, 101 (1976).[9] Among other indignities,

the Eighth Amendment forbids punishment that involves "the unnecessary and wanton infliction

of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Supreme Court has made clear that

"deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and

wanton infliction of pain proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104

(internal citations omitted).

"To establish that a health care provider's actions constitute deliberate indifference to a

serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as

to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Burton*, 896 F.2d

848, 851 (4th Cir. 1990). Additionally, the medical "need must be both apparent and serious, and

the denial of attention must be both deliberate and without legitimate penological objective."

*Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). "Deliberate indifference is a very high

standard – a showing of mere negligence will not meet it." *Id.* Instead, "deliberate indifference

may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. "A

defendant acts recklessly by disregarding a substantial risk of danger that is either known to the

defendant or which would be apparent to a reasonable person in the defendant's position." *Id.* at

851-52. A mistake is not sufficient to establish a claim under the Eighth or Fourteenth

Amendments because "the Constitution is designed to deal with deprivations of rights, not errors

in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d

at 695-696.

---

[9] Although the issue has not been raised, Plaintiff's claims against Corizon and the Corizon Nurses likely only arise
under the Fourteenth Amendment. "While the Eighth Amendment prohibits the infliction of cruel and unusual
punishment upon prisoners, it applies only 'after [the State] has secured a formal adjudication of guilt in accordance
with due process of law." *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 581 (3rd Cir. 2003) (quoting
*City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). However, the "Supreme Court has
concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth
Amendment protections available to a convicted prisoner . . . ." *Id.* Thus, the analysis is the same regardless of
whether the claim falls under the Eighth or Fourteenth Amendments.

Here, Corizon notes that "the Second Amended Complaint lays out specific detail, across four pages, the life-saving efforts undertaken by both Detention Center and Corizon employees within the span of nine minutes." ECF No. 62-1 at 14. And, indeed, actions taken to help Shields by the Corizon Nurses, identified in the Second Amended Complaint, include, but are not limited to: checking his pulse, ECF No. 52-1 ¶ 157, using the "Ambo bag" to pump air into him, *id.* ¶¶ 162-163, retrieving an oxygen tank, *id.* ¶ 165, and using an automated external defibrillator ("AED"), *id.* ¶ 168. Thus, Defendants argue that these efforts demonstrate that, "at worst," Plaintiffs have alleged negligence and not deliberate indifference. ECF No. 62-1 at 14. But "the fact that an inmate has received *some* care for his condition does not preclude recovery under the eighth amendment." *Simkus v. Granger*, 1991 U.S. App. LEXIS 16751, at *6 (4th Cir. July 30, 1991) (emphasis added).

More critically, the Second Amended Complaint also lists in detail many specific actions that the Corizon Nurses failed to take. Specifically, the Corizon Nurses failed to take control of the medical emergency from the ERT officers, ECF No. 52-1 ¶¶ 152-153, failed to check Shields' airway for any obstruction, *id.* ¶ 158, never checked Shields' oxygen level, *id.* ¶ 159, failed to properly administer the Ambo bag consistent with medically prescribed standards, *id.* ¶ 162, never performed any chest compressions on Shields, *id.* ¶ 164, and waited longer than the standard time period to utilize the AED, *id.* ¶ 169-170. Assuming the truth of the allegations in the Second Amended Complaint, these failures occurred after Shields had just suffered a severe beating, was unconscious and was dealing with a clear life-threatening medical emergency. *Id.* ¶¶ 135, 151. As the Fourth Circuit noted in *Miltier*, "[f]ailure to respond to an inmate's known medical needs raises an inference that there was deliberate indifference to those needs." 896 F.2d at 853.

12

And, supported by those specific allegations, the Second Amended Complaint alleges more generally that Corizon did not ensure that CPR and adequate medical aid was properly administered; watched the ERT/Detention Center personnel administer defective aid; failed to provide adequate medical treatment; and acted with deliberate indifference to Shields' serious medical needs. ECF No. 52-1 ¶¶ 249-252. Thus, Plaintiffs have alleged more than just mere negligence. Instead, if borne out through discovery, Plaintiffs have alleged facts from which a jury might determine that "the medical care provided was so cursory as to amount to no treatment at all," *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 704 (11th Cir. 1985), and was a "breach of care . . . so egregious as to be deliberately indifferent to [Shields'] medical needs." *Miltier,* 896 F.2d at 853.

Thus, Count V of the Second Amended Complaint, alleging Constitutional violations under 42 U.S.C. § 1983 against the Corizon Nurses, is not futile and the Motion for Leave to File a Second Amended Complaint is granted as to this count.

### b. Corizon's Liability

Plaintiff also alleges constitutional violations against Corizon, a private corporation, arising under 42 U.S.C. § 1983. "Although the 'principles of § 1983 policy-maker liability were articulated in the context of suits brought against municipalities and other local government defendants,' they 'are equally applicable to a private corporation acting under color of law when an employee exercises final policymaking authority concerning an action that allegedly causes a deprivation of federal rights'" *Brondas v. Corizon Health, Inc.,* 7:14-CV-00369, 2015 U.S. Dist. LEXIS 71921 at *12-13 (W.D.Va. June 3, 2015) (citing *Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 728 (4th Cir. 1999). Corizon has not disputed that in providing medical services to pre-trial detainees it was acting under color of law. *See also Fields v. Corizon Health, Inc.,* 490 Fed.

13

Appx. 174, 181-182 (11th Cir. 2012) (finding that private entity providing medical services to inmates served a state function and could be held liable under § 1983); *Natale v. Camden County Correctional Facility,* 318 F.3d 575, 581 (3rd Cir. 2003) ("It is undisputed that [New Jersey's Prison Health Services, PHS] was acting under color of state law when it provided medical services to [an inmate]"). Thus, the Court will analyze Corizon's liability as it would the liability of a municipal employer.

A municipality cannot be held liable under § 1983 simply based on a theory of *respondeat superior* because it employs a tort-feasor. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 694 (1978). Instead, "[s]ection 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Likewise, "private corporations can only be held liable under § 1983 if 'an official policy or custom of the corporation causes the alleged deprivation of federal rights.'" [10] *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003) (quoting *Penbaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986)). Proximate causation requires a demonstration that the policy or custom is "the moving force behind the particular constitutional violation." *Jones v. Chapman*, ELH-14-2627, 2015 U.S. Dist. LEXIS 96562, at *35 (D. Md. July 24, 2015).

Here, Plaintiffs allege, *inter alia*, that Defendants had a custom of denying inmates "access to appropriate, competent and necessary care for serious medical . . . needs." ECF No.

---

[10] Courts have begun to question whether this protection afforded to municipalities should be afforded to private corporations acting under color of law or if vicarious liability should be permitted. *See, e.g., Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 786 (7th Cir. 2014) ("Our prior cases hold, but without persuasive explanations, that the *Monell* standard extends from local governments to private corporations . . . [T]hat conclusion is not self-evident."). The Court will not address this issue now, as it has not been asked to do so, but "as state and local governments expand the privatization of government functions, the importance of the question is growing." *Id.*

52-1 ¶ 551. "A municipal custom may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (internal citation omitted). Additionally, "a custom may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Jones*, 2015 U.S. Dist LEXIS 96562, at *36-37.

In support of his claim, Plaintiff's Second Amended Complaint contains 22 pages of allegations related to previous lawsuits and complaints regarding Corizon employees in 14 different states. Among the allegations include:

- A 2012 lawsuit settled by Corizon involving the death of an inmate at the St. Louis, Missouri jail who was under the care of Corizon. ECF No. 52-1 ¶¶ 304-306.

- A jury verdict against Corizon stemming from the 2007 failure of Corizon's predecessor, PHS, to properly treat an inmate in the Florida Department of Corrections for an intestinal problem later discovered to be caused by an abscess compressed against his spine. *Id.* ¶¶ 314-323.

- A November 2011 report detailing deficiencies in medical care by Corizon at the Maine Department of Corrections. *Id.* ¶¶ 365-370.

- Seven healthcare-related deaths in a seven month period in 2012 during Corizon's contract with the Metro Department of Corrections in Louisville, Kentucky leading to a determination that Corizon had taken an unreasonable amount of time

to evaluate and treat prisoners and that certain deaths were preventable. *Id.* ¶¶ 371-389.

- The death of nine prisoners due to the delay or denial of medical care by Corizon or its predecessor at the Minnesota Department of Corrections. *Id.* ¶¶ 390-395.

- A September 2015 early termination of Corizon's contract with the Allegheny County jail as a result of the death of eleven inmates, including the death of two inmates due to inadequate medical care. *Id.* ¶¶ 396-406.

- A March 2015 settlement agreement involving an injunction based on inadequate medical care provided to inmates in the State of California. *Id.* ¶¶ 407-418.

- A 2015 investigation by the New York City Department of Investigations revealing an inmate who was "left dying and untreated for six days while correctional officials and Corizon doctors, mental health clinicians and nurses made fifty seven visits to his cell and did not render any medical care to him." *Id.* ¶¶ 444-447.

Defendant Corizon contends that these allegations are insufficient to sustain a *Monell* claim. But the Fourth Circuit has indicated that while "prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 403 (4th Cir. 2014). In *Owens*, the Fourth Circuit held that an allegation of "reported and unreported cases from the period of time before and during the events complained of" and a "number of motions" being filed and granted were sufficient to establish a custom, policy or practice of a police department knowingly and repeatedly suppressing exculpatory evidence in criminal prosecutions for purposes of surviving Rule 12(b)(6) dismissal. *Id.* at 403-404. *See also Jones v. Chapman*, ELH-14-2627, 2015 U.S. Dist.

LEXIS 96562, at *42 (D. Md. July 24, 2015) (finding that allegation of three prior incidents of excessive force were sufficient to survive Rule 12(b)(6) dismissal of a *Monell* claim against the municipality).

While the allegations here are far more detailed and numerous than those in *Owens*, Defendant Corizon, correctly, notes that none of these allegations relate to the facility or even the state at issue in this case. Indeed, it is certainly true that in cases such as *Owens*, the allegations were all tied to the same geographical locale as the instant allegation. That is to be expected as *Owens*, and most other cases applying the *Monell* framework, involve local police departments or other municipalities. Clearly, a police officer's actions in another state, which would presumably involve a different police department, would have no bearing on establishing a custom or practice for police officers in this state. But Corizon is "a company that provides healthcare services to state and county correctional facilities and jails nationwide." ECF No. 52-1 ¶ 26. Thus, its activities in a variety of states can be, and in this case are, relevant to the issue of custom and policy here. Therefore, Plaintiff has sufficiently alleged that Corizon has a pattern, practice, policy and custom of denying inmates access to appropriate, competent and necessary care for serious medical needs.

Having established a custom, Plaintiff must still demonstrate a causal connection between the custom and the specific violation alleged. *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987). The Fourth Circuit in *Spell* describes how a plaintiff can establish such a connection:

> Municipal fault for allowing such a developed 'custom or usage' to continue requires (1) actual or constructive knowledge of its existence by responsible policymakers and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices. Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these. . . . A sufficiently close causal link between such a known but uncorrected custom or usage and a specific

17

> violation is established if occurrence of the specific violation was made
> reasonably probable by permitted continuation of the custom.

*Id.* (internal citations omitted). Here, Plaintiffs have alleged a years-long custom and practice involving multiple successful lawsuits brought against Corizon and its predecessor companies, reports discussing their failures and the termination of contracts in other jurisdictions based on Corizon's deficiencies. Corizon's policy makers would be expected to have actual knowledge, or at least, constructive knowledge of these prior incidents. Their alleged failure to correct such repeated violations supports Plaintiffs' allegation that Corizon condoned or was deliberately indifferent to such conduct, which was the proximate cause of the deprivation of Shields' rights. ECF No. 52-1 ¶¶ 568-569. Thus, the Plaintiffs have sufficiently alleged a *Monell* claim against Corizon. *See Garcia v. Montgomery Cty, Maryland*, JFM-12-3592, 2013 U.S. Dist. LEXIS 120659 at *14 (D. Md. August 23, 2013) (finding that plaintiff had sufficiently alleged a *Monell* claim based on policy, custom or practice where "the complaint alleges that Montgomery County was aware of unconstitutional actions by MCPD officers directed towards members of the media but chose to ignore such behavior. . . and that the county's failure to supervise and discipline its officers allowed a pattern and/or practice of unconstitutional actions to develop").[11] Thus, Plaintiff's Motion for Leave to Amend as to Count VI is granted.

### 2. Violation of the ADA

---

[11] Although Plaintiff also alleges deficient training as an alternative method of establishing *Monell* liability, Plaintiff's allegations regarding training would not be sufficient to state a *Monell* claim. In order to establish *Monell* liability based on deficient training, Plaintiff must allege a "specific deficiency rather than general laxness or ineffectiveness in training." *Spell,* 824 F.2d at 1390. Here, while Plaintiff makes conclusory allegations about poor training, Plaintiff fails to specifically allege the nature of the training received or how any deficiencies impacted the specific allegations in this case. *See Jones,* 2015 U.S. Dist. LEXIS 96562, at *56 (dismissing training claim because plaintiff failed to allege "any particular information about the nature of existing training methods."). Additionally, Plaintiff alleges and argues that Corizon should also be held liable under the doctrine of supervisor liability. ECF No. 73 at 10. But Plaintiff does not identify any supervisory officers. *See Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2002) ("the theory of supervisory liability arises from the obligation of a supervisory law officer to insure that his subordinates act within the law."). Thus, Count VI will not proceed on a theory of supervisory liability or negligent training but will proceed as a *Monell* claim against Corizon based on custom and practice.

Plaintiff also alleges that Corizon violated Title II of the ADA. ECF No. 56-1 ¶¶ 588-601. To recover under Title II of the ADA, a plaintiff must demonstrate that "(1) [he] has a disability, (2) [he] is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) [he] was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of [his] disability." *Constantine v. The Rectors and Visitors of George Mason University*, 411 F.3d 474, 499 (4th Cir. 2005). Regulations implementing Title II of the ADA require that "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." 28 C.F.R. § 35.160(b)(1). "In determining what type of auxiliary aid is necessary, a public entity must give 'primary consideration' to the accommodation requested by the disabled individual." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1137 (9th Cir. 2001).

Plaintiff contends that he has stated an ADA claim based on allegations that he was denied appropriate correctional services because "he needed reasonable accommodations [in the Detention Center] due to his mental disability . . . [and] [d]espite this obvious need, Corizon medical personnel provided no accommodation to [him]." ECF No. 73 at 20. Relying on cases such as *Duvall*, 260 F.3d 1124 and *Proctor v. Prince George's Hospital Center*, 32 F. Supp. 2d 820 (D. Md. 1998), Plaintiff argues that "both compensatory and punitive damages are available to ADA plaintiffs stemming from a public entity's deliberate indifference to the needs of the plaintiff" and that Corizon's failure to provide an accommodation for plaintiff amounted to deliberate indifference. ECF No. 73 at 19-20. But in discussing the issue of deliberate indifference, the Ninth Circuit in *Duvall* stated that "[w]hen the plaintiff has alerted the public

entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Duvall*, 260 F.3d at 1139; *see also Proctor*, 32 F. Supp. 2d at 829 (discussing the defendant's "deliberate choice to rely on methods of communications other than a sign language interpreter" where plaintiff had repeatedly requested an interpreter).

In this case, Plaintiff makes no more than a general allegation, unsupported by specific facts, that Defendant Corizon was ever aware of Plaintiff's disability or the need for an accommodation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). In support of his claim, Plaintiff alleges that "Nurse Victoria, a Corizon employee, reported to the processing area, where Samuel Shields was held, to interview detainees." ECF No. 52-1 ¶ 66. But Plaintiff does not allege that Nurse Victoria could or did make any relevant observations of Shields. Additionally, Plaintiff alleges that "based on Officer Roger's Statements to Evans, White and Duckett and Samuel Shields strange and bizarre behavior, Defendants Prince George's County and Corizon were fully aware from the time that Samuel Shields entered the Detention Center he suffered from a mental health disorder." *Id.* ¶ 67. But "Evans, White and Duckett" were not Corizon employees and there is no allegation that a Corizon employee observed Samuel Shields' "strange and bizarre behavior" or that such behavior was indicative of a disability requiring an accommodation. Thus, the Court is left to speculate as to what the Corizon employees actually witnessed or may have been told. Yet, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As Plaintiff has alleged no specific

20

basis by which Corizon would have been aware of a disability, received a request for a reasonable accommodation or perceived an obvious need for such an accommodation, Plaintiff has not sufficiently alleged that Corizon should have provided a reasonable accommodation and that the failure to do so caused him to be denied service because of his disability.[12]

Thus, the Plaintiffs Motion to Amend is denied as to Count VIII and Defendant Corizon's Motion to Dismiss the ADA claim is granted.

### III.   CONCLUSION

For the reasons stated above, Defendant Prince George's County's Motion for Bifurcation and Stay of Discovery is DENIED, Plaintiff's Motion for Leave to File a Second Amended Complaint is GRANTED in part and DENIED in part, Defendant Corizon's Motion to Strike is DENIED, as moot, and Defendant Corizon's Motion to Dismiss is DENIED in part and GRANTED in part. A separate order shall follow.

Dated: __September 1, 2016__

GEORGE J. HAZEL
United States District Judge

---

[12] Additionally, while making passing references to the fact that Plaintiff was not provided with his medication and difficulty communicating, it is unclear from the Second Amended Complaint precisely what reasonable accommodation Plaintiff alleges should have been provided by Corizon.